UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:05CV494, 3:05CV496

| | |
|---|---|
| BARRY W. THOMAS, )<br>       Plaintiff, )<br>v. )<br>)<br>ECHOSTAR SATELLITE L.L.C. et al., )<br>       Defendants. )<br>)<br>BARRY W. THOMAS, )<br>       Plaintiff, )<br>v. )<br>)<br>DIRECTV, INC. et al., )<br>       Defendants. )<br>) | ORDER |

## INTRODUCTION

These are two related patent infringement actions. Plaintiff Barry Thomas is the sole named inventor of the now expired United States Patent No. 4,777,354 ("the '354 patent"), entitled "System for Controlling the Supply of Utility Services to Consumers." The '354 patent was filed on January 27, 1986, and issued on October 11, 1988. It expired on January 27, 2006. In November 2005, Thomas filed separate complaints against Defendants Echostar and DIRECTV, alleging that each infringed, induced infringement, and contributorily infringed the '354 patent by offering for sale, manufacturing, and/or selling satellite television receiving equipment that is covered by the patented invention. The defendants each answered the complaints by denying the allegations, and asserting various affirmative defenses and counterclaims for declaratory relief. The Court has jurisdiction over these matters. 28 U.S.C. §§ 1331, 1338(a).

1

Currently before the Court are motions by DIRECTV (Doc. No. 35) and EchoStar (Doc. No. 26) for summary judgment under the doctrine of laches barring Thomas from recovering pre-suit damages. The Court finds that Thomas's delay in filing both complaints is presumed unreasonable and prejudicial, and that in both cases Thomas has failed both to identify any circumstance or excuse that would counter the presumption that his delays of more than eight years were unreasonably long, or to offer proof that puts the presumed facts of economic or evidentiary prejudice in issue. Thomas also has failed to offer evidence of either egregious conduct on the part of DIRECTV or other factors which make it inequitable to recognize the defense, or any material difference between the defendants' receivers known to Thomas in 1997 and the newer accused models in these cases that would preclude the application of laches to all accused devices. Therefore, the Court grants EchoStar's and DIRECTV's motions for summary judgment on the issue of laches. Plaintiff Thomas is barred from recovering any pre-suit damages against either. The reasons for the Court's decision follow, beginning with the following facts that it finds to be material and undisputed.

**FINDINGS OF FACT**

It was in November of 1996 that Thomas first asked the law firm of Nixon & Vanderhye P.C. (his and his company's patent counsel since 1986) to investigate possible infringement of the '354 patent by DIRECTV. (DIRECTV Mem. Ex. 6; Ex. 4A, Tr. at 53). Specifically, Thomas was curious about the "Smart Card" that was used in DIRECTV's satellite receivers. (EchoStar Mem. Ex. 6, Tr. at 63-4; DIRECTV Mem. Ex. 4, Tr. at 50-51). His suspicion of DIRECTV also was prompted by the fact that the copies of his application and the '354 patent that he had sent to DIRECTV's predecessor, Hughes Electronics, were returned to him years later without any discussion.

2

(DIRECTV Mem. Ex. 4E,Tr. 229-231; Ex. 10, Tr. at 120-21).[1] Dr. Mitchard (the attorney who had prepared and prosecuted the '354 application) and Al Kagan handled the infringement analysis. Thomas himself subscribed to the DIRECTV service and obtained a "HIRD" receiver for the purpose of analyzing the equipment for potential infringement of the '354 patent. (DIRECTV Mem. Ex. 4, Tr. at 49-50).

Thomas continued to communicate with his attorneys over the course of the next year about possible infringement by DIRECTV and by cellular phone companies BellSouth and Motorola. In November, Thomas sent his attorneys his annotated user manual and his own comparison of the features of the HIRD receiver to his patent.[2] He included an article describing four satellite television providers, including EchoStar and DIRECTV, with a note stating "[a] listing of 5 companies now providing digital satellite services. All have their own satellites and use a card in the receiver."

On December 19, 1997, Al Kagen called Thomas and said that he "[didn't] have any infringement case" against DIRECTV, Motorola, BellSouth. (DIRECTV Mem. Ex. 4, Tr. at 88). According to Thomas, he accepted the conclusion, although he "never . . . had an in-depth discussion with Kagan, nor did [he] ever argue with him on certain claim construction" or ask Dr. Mitchard any questions. (DIRECTV Mem. Ex. 8, Tr. at 392-394; EchoStar Mem. Ex. 7, Tr. at 63, 114-115).

---

[1] More precisely, in 1986 Thomas had sent his a copy of his patent application to Ernie Culver, an acquaintance of his who worked for Hughes Aircraft Company. Then, in 1990, Thomas sent Culver a copy of the '354 patent. Although Culver allegedly later indicated that Hughes was interested in a "utility controller," Hughes returned the materials to Thomas in 1991, with a letter from Hughes' legal department stating that it was "returning certain information sent by Ernie [Culver] to Jim Roberts . . . which was directly forwarded to [the legal department] and sequestered. The information is being returned and there will be no discussions related to the subject matter thereof with Ernie Culver, to protect any proprietary position you may have in such information from public disclosure."

[2] Thomas specifically noted, *inter alia*, that DIRECTV's receiver used an "access card" with "stored information" to allow customer to receive and "control" the distribution of multiple television services, including subscription and "pay-per-view" programming. (EchoStar Mem. Ex. 5).

3

Thomas never examined Echostar's DISH network receiver by himself or with his attorney. (DIRECTV Mem. Ex. 6, Tr. at 98; EchoStar Reply Ex. 4, Tr. at 50; Ex. 9, Tr. At 45).

Thomas took no further action regarding DIRECTV or EchoStar (or any other company) during the next seven years, although both companies continued to make, sell and use satellite television receivers. In 2003, however, Thomas, concerned with the looming expiration of his patent, sought a second infringement opinion. (DIRECTV Mem. Ex. 4A, Tr. at 45; Ex. 8, Tr. at 393-96). He met with his current counsel that November. In September 2004, Thomas's counsel sent letters to DIRECTV and EchoStar, advising that their receivers may infringe the '354 patent and offering a license under the patent.[3] When both companies requested the basis for any claim of infringement of the '354 patent, Thomas followed-up a year later with a claim chart detailing his infringement allegations. No agreement was reached, and Thomas subsequently filed complaints against EchoStar, DIRECTV and a number of other defendants in November and December 2006.

## LEGAL STANDARDS

DIRECTV and EchoStar have filed separate motions for summary judgment barring any pre-suit damages for Thomas's claim of infringement under the doctrine of laches.

Laches is defined as "the neglect or delay in bringing suit to remedy an alleged wrong, which taken together with lapse of time and other circumstances, causes prejudice to the adverse party and operates as an equitable bar." A.C. Aukerman Co. v. R.L. Chaides Construction Co., 960 F.2d 1020, 1028-29 (Fed. Cir. 1992) (en banc). When laches is applied, the patentee may not recover any

---

[3]Specifically, the letters alleged that the particular defendant's "digital satellite service makes use of "Smart Card" technology to enable the distribution of television service to subscribers over predetermined time periods, particularly with respect to pay-per-view-services."

damages for the period of time prior to filing suit. Id. at 1028. It is an equitable determination, amenable to being resolved on summary judgment where the facts necessary for determining laches are not genuinely disputed, the burden of proof of an issue is allocated correctly, and all pertinent factors are considered. Id. at 1039 (citations omitted).

To establish a defense of laches, the defendant has the burden of proving by a preponderance of the evidence that the plaintiff delayed filing suit an unreasonable and inexcusable length of time after the plaintiff knew or reasonably should have known of the defendant's alleged infringing activity, and the delay resulted in material prejudice to the defendant.

With regard to the first element, the Court looks to the period of time beginning when the plaintiff knew or reasonably should have known of the facts underlying right or cause of action. Id. at 1033. While the length of time that may be considered unreasonable "has no fixed boundaries but rather depends on the circumstances," a delay of six years or more raises a presumption that the delay is unreasonable, inexcusable, and prejudicial. Id. at 1032, 1035-36. The plaintiff may rebut the presumption by demonstrating a genuine issue of material fact respecting either the reasonableness of the delay, or the alleged prejudice. The Court must also consider and weigh excuse for the delay offered by the plaintiff. Id. at 1033.[4]

With respect to the second element, the defendant can establish either economic prejudice or evidentiary prejudice. Evidentiary prejudice may arise where the delay has curtailed the defendant's ability to present a full and fair defense on the merits due to the loss of evidence, the death of a witness, or the unreliability of memories. Id. at 1033. Economic prejudice arises where

---

[4] These excuses include, but are not limited to: (1) other litigation; (2) negotiations with the accused; (3) possible poverty or illness under limited circumstances; (4) wartime conditions; (5) the extent of the alleged infringement; and (6) a dispute over the ownership of the asserted patent.

a defendant suffers the loss of monetary investments or incurs damages that would have been prevented if the plaintiff had filed suit earlier. Id; Hemstreet v. Computer Entry Sys. Corp., 972 F.2d 1290, 1294 (Fed. Cir. 1992) (the "change must be because of and as a result of the [patentee's] delay, not simply a business decision to capitalize on a market opportunity.").

Finally, because the defense of laches is an equitable doctrine that must be considered in light of the facts and circumstances of the case, "mechanical rules" do not govern its application. Id. at 1032. Thus, even if the critical elements of delay and prejudice are established, the Court may deny a laches defense where there is evidence of other factors which would make it inequitable to recognize the defense. Id. at 1034.

Based on this standard, the Court finds that the laches defense is appropriate as to both defendants and will grant summary judgment in favor of DIRECTV and EchoStar.

## DISCUSSION

**1. The Presumption of Laches Applies and Both Defendants Also Have Demonstrated Actual Material Prejudice.**

The Court finds that EchoStar and DIRECTV have proved that eight and nine years elapsed between the time Thomas first was aware of their respective receivers and believed that they involved technology similar to the '354 patent, and when he filed his complaints. Thomas concedes that the delay in bringing suit is presumed unreasonable and prejudicial.

The Court also finds that the EchoStar and DIRECTV have offered actual evidentiary prejudice, namely that due to the passage of time: (1) Dr. Mitchard no longer has any independent recollection of the prosecution of the '354 patent; (2) nearly all documents referenced in the relevant

billing records of Nixon & Vanderhye pertinent to the 1997 infringement investigation with respect to DIRECTV – including the assessment of non-infringement – are no longer available; and (3) Mitchard and Kagan do not have any independent recollection of the infringement analysis, and Thomas's recollection of certain events pertinent to his allegations is, at best, minimal. While "[c]onclusory statements that there are missing witnesses, that witnesses' memories have lessened, and that there is missing documentary evidence, are not sufficient" to prove that the defendant suffered injury" (Meyers v. Asics Corp., 974 F.2d 1304, 1308 (Fed. Cir. 1992)), the absence of testimonial and documentary evidence from the attorney who wrote and prosecuted the '354 patent and later found that the products here accused did not infringe clearly inhibits the defendants' ability to present a full and fair defense, particularly with respect to claim construction, their defenses of inequitable conduct, and Thomas's allegations willful infringement. See, e.g., Odetics, 919 F.Supp. at 922 ("Odetics' patent counsel responsible for prosecuting the '151 patent no longer have any recollection regarding their representation of Odetics with respect to that patent, including the meaning or intent of the patent claims.").

As the presumption applies in this case, the burden of proof, although not the burden of persuasion, now shifts to Thomas to introduce "a minimum quantum of evidence" that his delay was reasonable under the circumstances, or whether an unreasonable delay can be shown due to any alleged excuses. If Thomas meets his burden, the presumption of laches "completely vanishes." Aukerman, 920 F.2d at 1037.

**2.    Thomas Has Failed to Counter the Presumption That His Delay Was Unreasonably Long**.

Thomas contends that his decision to refrain from filing earlier against DIRECTV was reasonable in light of: (1) Hughes's alleged disinterest in 1991 in licensing his patent; (2) his

7

attorneys' 1997 opinion of non-infringement; (3) his inability to determine infringement on his own. And he contends his delay in filing suit against EchoStar also is reasonable because "EchoStar has a system that is visually very similar to the DirecTV system and appears to perform in exactly the same way," and therefore Thomas was reasonable to impute "his counsel's opinion of noninfringement by DirecTV to the EchoStar system." The Court finds none of these identified circumstance counter the presumption that his delay of more than six years was unreasonably and inexcusably long.

First, Thomas's argument that the 1991 letter from Hughes on the subject of the '354 patent influenced him against a belief that Hughes would infringe his patent is belied by that fact that he did, in fact, suspect infringement, both in 1996, when he first began investigating DIRECTV's receivers, and in 2003, when he sought a second infringement analysis.[5]

Second, Thomas's inability to conclusively determine infringement on his own does not justify his laches. It is well-settled that the knowledge relevant to the laches inquiry is the plaintiff's knowledge of the facts and features of the accused product that form his infringement allegation. Knowledge as to whether the device itself actually infringe one's patent is not required to establish laches. See ABB Robotics, Inc. v. GMFanuc Robotics Corp., 52 F.3d 1062, 1391 (Fed. Cir. 1995) ("It is settled that the laches period begins when the plaintiff discovers the facts which create his right or cause of action . . . . Even if Dr. Coleman did not know whether the Corvac was technically an 'infringement'. . . he knew all the facts concerning the Corvac project.") (citing Coleman v. Corning Glass Works, 619 F.Supp. 950, 954 (W.D.N.Y. 1985), aff'd, 818 F.2d 874 (Fed. Cir. 1987).[6]

---

[5] Indeed, Thomas admits that he had been "obsessed" with Hughes "with their turn down, having had my patent." (DIRECTV Mem. Ex. 10, Tr. at 120-121).

[6] See also Alexander v. Phillips Petroleum Co., 130 F.2d 593, 606 (10th Cir. 1942) ("[W]here the facts were known to the plaintiff, ignorance of the law . . . will not ordinarily excuse delay in asserting the claim."); Wanlass v. General Elec. Co., 148

Similarly, Thomas's acceptance of Kagen's opinion in 1997 (that Thomas had no case against DIRECTV) likewise does not appear to be a legally cognizable reason for his delay in filing suit. See, e.g., Coleman, 619 F.Supp at 954 (rejecting the idea that the laches period begins running only after a patent holder receives a favorable legal opinion, as the fact that is "critical for the measurement of laches, [is] that [the plaintiff] waited more than six [] years to apprise the defendant of those plans.").[7] However, even if it justifies his decision not to file suit in December of 1997, it did not suspend indefinitely Thomas's duty to pursue his claim against DIRECTV. Thomas fails to explain why it was reasonable for him to delay six years to seek a second opinion and another two in filing suit, other than to say that he is "a very patient individual" who was "not in any hurry," and his patent "still had years on its life." These clearly do not justify the delay, particularly since, as Thomas admits, "nothing prevented him from getting an second opinion [earlier]," and the circumstance that prompted him to seek a second opinion was that"[Thomas] realized [his patent] was going to expire."

The Court similarly finds that Thomas has failed show that his delay with respect to EchoStar was justified. Moreover, Thomas's contention that he was reasonable to apply Kagan's opinion of non-infringement by DIRECTV to the EchoStar system is belied by that fact that Thomas had never seen an EchoStar receiver, and there is no evidence that his attorneys ever performed or discussed any comparison of an EchoStar receiver to a DIRECTV receiver.

---

F.3d 1334 (Fed. Cir. 1998) ("the means of knowledge are generally equivalent to actual knowledge") (citing Potash Co. of America v. International Minerals & Chemical Corp., 213 F.2d 153, 155 (10th Cir. 1954)); Odetics, Inc. v. Storage Technology Corp., 919 F.Supp. 917, 922 (E.D.Va. 1996), remanded on other grounds, 116 F.3d 1497 (Fed. Cir. 1997) ("delay in filing suit is not justified where "the patentee already knew about the product, knew that it involved technology similar to the patented invention, and knew that it accomplished a similar result.").

[7]See also Triple A Partnership v. MPL Communications, 1986 U.S. Dist. LEXIS 23132, at *11 (D. Kan. July 7, 1986) ("Faulty advice, however, even from counsel, 'is no defense against the charge of laches.' ") (citations omitted); Charles Hall v. Aqua Queen Manufacturing, 93 F.3d 1548, 1554 (Fed. Cir. 1996) ("[a] patentee's inability to find willing counsel . . . is widely rejected as a legally cognizable reason to excuse an unreasonable delay"); cf. Wanlass v. General Elec. Co., 148 F.3d at 1339 ("Determining that GE was not infringing his patent . . . did not absolve Wanlass of his duty to conduct future investigations.").

### 3. Thomas has Failed to Offer Affirmative Evidence Rebutting the Presumption of Prejudice

To succeed in rebutting the presumption that the defendants suffered material prejudice, Thomas is required to affirmatively prove that "no additional prejudice occurred in the six-year time period, i.e., that evidence respecting an alleged infringer's defenses remains available substantially as before the delay and that economic prejudice . . . has not occurred." Aukerman, 960 F.2d at 1038. Thomas, however, merely disputes the relevance and/or credibility of the defendants' evidence of evidentiary prejudice, and thus has failed to demonstrate the "minimum quantum of evidence" necessary to rebut the presumption.

For example, Thomas contests the relevance of the fact that Dr. Mitchard has no independent recollection of the prosecution of the '354 patent application. According to Thomas, the loss of this information is not prejudicial because (1) "the evidence that is relevant . . . is amply covered in the official prosecution history, which is not lost"; (2) "there is no proof that anything that would have been in [Dr. Mitchard's] memory in 1997 but not today is relevant to any question of fact or law in this case"; (3) "this evidence had already been lost well in advance of the 1997 investigation"; and (4) the allegations of inequitable conduct (involving undisclosed prior art) are "spurious." Thomas also contests the relevance of testimonial and documentary evidence concerning Nixon & Vanderhye's analysis of the '354 patent with respect to DIRECTV, asserting that (1) the evidence in question "related solely to the propriety of DIRECTV's laches claim, and not to any question of infringement or any other matter in this case"; and (2) "The Court need not know whether Mr. Kagen agreed in fine detail with EchoStar's position in 2004 in order to determine whether EchoStar's position was reasonable."

10

The Court notes none of Thomas's contentions are supported with references to the record. Even had Thomas supported his positions, however, it would not have been enough. Once the presumption is established, Thomas was required to do more than just merely point to alleged weaknesses in the defendants' evidence of prejudice; he was required to make an affirmative showing of a lack of prejudice.[8] Hall v. Aqua Queen Mfg., Inc., 93 F.3d 1548, 1554 (Fed. Cir. 1996) ("[T]he defendant[s] could have remained utterly mute on the issue of prejudice and nonetheless prevailed.").[9]

### 3. The Plaintiff Has Fail to Offer Evidence of Any "Misrepresentation" or Other Egregious Conduct by DIRECTV.

The party advancing the unclean hands argument must prove that "the infringer has engaged in particularly egregious conduct [that] would change the equities significantly in plaintiff's favor." Aukerman, 960 F.2d at 1033 (internal quotation marks omitted). What constitutes egregious conduct is not clear. Where the one asserting the defense of laches was responsible for the plaintiff's delay, or allayed the plaintiff's suspicions through deception, or evidence of plagiarism, harassment, or intentional copying of the plaintiff's product may qualify. Potash Company of America v. International Minerals & Chemical Corp., 213 F.2d 153, 155 (10th Cir. 1954); TWM Mfg. Co., Inc. v. Dura Corp., 592 F.2d 346, 349 (6th. Cir. 1979); Gasser Chair Co., Inc. v. Infanti Chair Mfg. Corp., 60 F.3d 770, 775 (Fed. Cir. 1995). In such circumstances, "the assertion of a laches defense would

---

[8] The Court in North American Philips Corp. v. Taito America Corp., articulated the burden as follows: "It would be very difficult for a plaintiff to marshal enough facts to show that the relevant evidence remained substantially the same throughout the six-year period. However, a concerted effort that discusses the type of evidence a defendant would need to put forth in order to succeed on its defenses and some offer of proof showing that the relevant evidence did not dissipate as a result of the delay, would have been enough to raise a genuine issue. Plaintiffs do not attempt systematically to show that the evidence defendant needs to mount a defense has not dissipated." No. 93-3261, 1997 WL 543111, at *9 (N.D. Ill. Aug. 29, 1997).

[9] In light of the Court's finding of evidentiary prejudice, it need not address whether Thomas has rebutted the presumption of economic prejudice as to either defendant.

be not only inequitable but unsound, for the plaintiff's delay would have given the defendant no good reason to believe that the patent rights were worthless or abandoned." Corning Glass Works, 619 F.Supp. 950, 955 (citing Galliher v. Cadwell, 145 U.S. 368, 372 (1892)).

Thomas contends that Hughes had knowledge of the '354 patent and knowledge of its own efforts to develop a satellite television service," and then "affirmatively misrepresented to Thomas that it would not be utilizing his invention, and cut off all communications with him." He, however, has presented no evidence that he and Culver (or anyone at Hughes) discussed the applicability of the patent to satellite television. Moreover, Thomas's interpretation of the 1991 letter from an attorney at Hughes to Thomas returning materials and informing him that it would not have further discussions with Culver "as an affirmative representation . . . . that Hughes would not be operating in this area" is not evidence that DIRECTV acted with unclean hands. And the Court finds nothing in any of the documents provided by Thomas or elsewhere in the record supporting his argument that Hughes made any misrepresentation. While the non-moving party is entitled to have conflicting inferences resolved in its favor, those inferences must flow rationally from the underlying facts. The Court will not consider conclusory allegations, improbable inferences and unsupported speculation. General Mills. Inc. v. Hunt-Wesson, 103 F.3d 978, 980 (Fed. Cir. 1997). Nor will it distort the plain meaning of words or conveniently read them out of context. Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 821-22 (4th Cir. 1995).

**4.     Laches Applies to All Accused Receivers**

Where an alleged infringer's conduct changes over time "as, for example, where the infringer begins to manufacture a different product-a new period of delay begins for laches purposes with each

change in conduct, unless the infringer can show that its prior conduct is substantially similar to the more recent conduct." Intertech Licensing Corp. v. Brown & Sharpe Manufacturing Co., 708 F. Supp. 1423, 1435 (D.Del. 1989) (citations omitted). A change in a product giving rise to a new laches period, however, must be a change that is material to the case. See, e.g., id. at 1435-37

Here, Thomas contends that any finding of laches finding should not apply to "other models not known to Thomas during the delay" since there are differences between the model in Thomas's possession in 1997 and subsequently released models. The Court, however, finds that Thomas's infringement theory against DIRECTV is the same for all accused models. He has admitted that (1) all known models of DIRECTV receivers, including the receiver in his possession since 1997, infringe the '354 patent for the same reasons; and (2) the his HIRD receiver contains the same features that he now alleges form the basis for his contention that all other accused models of DIRECTV receivers infringe.

Nor does Thomas explain how the differences the that he has identified – "dual tuners" and "digital video recording," – are material to this case. He merely argues is that these changes "are potentially relevant to an inquiry regarding infringement." And while Thomas asserts that these features may qualify as additional "potential services," he does not explain why this would matter given his allegation that the "plurality of services" requirement of the patent is already satisfied by the accused model in Thomas's possession since 1997.[10]

The Court is likewise unpersuaded by Thomas's argument that the absence of a claim construction ruling by the Court precludes a finding of laches with respect to all DISH network

---

[10] The Court agrees with DIRECTV that "Thomas's argument concerning product differences" is the sort of "litigation-induced, after the fact" gamesmanship expressly rejected by the court in Intertech. 708 F.Supp. at 1431 ("In what appears to have been an effort by Lemelson to avoid a finding of laches, plaintiff abruptly turned its attention to the question of whether Brown & Sharpe's measuring machines contained touch sensitive probes and operated under direct computer control.").

receivers, since he cannot determine whether they "infringe in the same way." Thomas, however, has failed to offer evidence – or argue– that there is any material difference between that receiver and any other EchoStar receiver that would prevent the application of laches.

## CONCLUSION

Thus, having weighed the length of the delay, the seriousness of prejudice, the reasonableness of Thomas's excuses, and the defendants' conduct, the Court finds that a defense of laches barring pre-suit damages is appropriate as to EchoStar and DIRECTV.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. In Case 3:5cv494, Defendant EchoStar partial Motion For Summary Judgment on the Doctrine of Laches (Doc. No. 26) be **GRANTED**.

2.. In Case 3:5cv496, Defendant DIRECTV's partial Motion For Summary Judgment on the Doctrine of Laches (Doc. No. 35) be **GRANTED**.

Signed: December 19, 2006

Robert J. Conrad, Jr.
Chief United States District Judge